**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

Dated: 05:07 PM August 22, 2022

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| RICK CURTIS POE, | ) | CASE NO. 19-60528 |
| | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

    The chapter 13 trustee seeks to modify Debtor's plan over Debtor's objection. The court held a hearing on May 11, 2022. Gerald Golub appeared for Debtor and Michelle Jackson-Limas, attorney for the Chapter 13 trustee ("Trustee"), appeared for the Trustee. On August 5, 2022, the parties submitted an agreed order. For the reasons set forth below, the court will not sign the order and sustains Debtor's objection to Trustee's modification.

    The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general order of reference entered by the United States District Court on April 4, 2012. The court has authority to issue a final order in this matter. Under 28 U.S.C. § 157(b)(2)(L), it is a core proceeding. Pursuant to 11 U.S.C. § 1409, venue in this court is proper. The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

    This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

1

## FACTS

Debtor filed a chapter 13 petition on March 15, 2019. Schedule I indicates Debtor was recently employed as a laborer at Ohio Gratings, Inc. After deductions for taxes, insurance, and domestic support obligations, his net take-home pay was $974.36 per month. His expenses were ridiculously modest: $400.00 for rent, $265.00 for utilities/cable/cell phone, $100.00 for food, and $150.00 for car insurance. His assets were minimal and included three vehicles, model years 1993, 2000 and 2002, all with at least 127,000 miles.

The court confirmed Debtor's amended plan on June 27, 2019. His payments were $62.82 per month for thirty-six (36) months. No secured or priority debt was identified. Consequently, Debtor's payments would pay the Trustee's fees and his attorney. Little, if anything, remained for unsecured creditors.

On March 8, 2022, three months before his payments were scheduled to end, Trustee filed a modification. It stated:

> Debtor's 2021 tax return indicates Debtor had a very significant increase in income. The increase was neither disclosed to Trustee nor was a Modification filed to increase the Plan payment. As a result, Debtor is required to pay that additional income of $24,488.00 into the Plan.
>
> Therefore, Part 2.1 of the Chapter 13 Plan is hereby modified to increase the Plan payments from $62.82 per month to $855.00 per month beginning March 2022. Additionally, Part 5.1 of the Chapter 13 Plan is hereby modified to indicate that the general unsecured creditors shall receive a dividend of 100%.
>
> Trustee may extend the Plan, if necessary, to maintain feasibility.

Debtor objected to the modification, alleging that his income had decreased, and he was no longer receiving the significant overtime wrought by Covid-19, the source of the 2021 increase.

Trustee conducted a 2004 examination of Debtor. Thereafter, the parties submitted an agreed order whereby Debtor agreed to pay Trustee $7,000.00 by August 31, 2022, as a result of the additional income. Upon receipt, Trustee agreed to mark the case paid and stop the wage order for further chapter 13 payments.

## DISCUSSION

Section 1329 allows a confirmed plan to be modified for several reasons, including "to increase or reduce the amount of payments on claims of a particular class." 11 U.S.C. § 1329(a). The effect of Trustee's proposed modification significantly increases the dividend to unsecured creditors, paying them in full, presumably a permissible purpose. On the facts presented, the

2

court considers the parameters of how to accomplish this purpose. For example, is Debtor required to self-report increased income and voluntarily pay it into the plan? Can Trustee recoup the alleged increase in disposable income in an after-the-fact modification? If so, does the modification provide authority to extend the plan beyond the original term of the plan? For the following reasons, the court finds the modification oversteps permissible bounds.

>   I.   **Debtor was not required to self-report or voluntarily modify his plan to include the increased income.**

The court is not aware of any provision in the Bankruptcy Code, the Bankruptcy Rules, the national chapter 13 plan, or the court's form confirmation order that places an obligation on Debtor to self-report and voluntarily pay increased wage earnings to Trustee. A debtor is obligated to report § 541(a)(5) property, such as life insurance proceeds that are either paid or payable to the debtor within one hundred and eighty (180) days of filing. Fed. R. Bankr. P. 1007(h). There is no corresponding requirement related to increased income in a chapter 13 case. See Keith M. Lundin, Lundin on Chapter 13, § 127.9, at ¶ 23, lundinonchapter13.com (last visited Aug. 17, 2022) (stating "no provision of the Code or Rules requires a Chapter 13 debtor to report the receipt of postpetition assets or increases in income, except the narrow class of inheritances . . . described in § 541(a)(5)").

Another treatise further explains:

>   It is also important to note that while Rule 1007(h) requires scheduling of property of the estate pursuant to section 541(a)(5), it does not require scheduling of property acquired postpetition that becomes property of the estate only due the operation of section 1207(a) or section 1306(a). Because all property acquired postpetition can become property of the estate, at least until confirmation of the plan, to require scheduling of such property would be completely impracticable. The debtor's cash on hand could, literally, change every day, as items are purchased and new paychecks are received. Similarly, every item purchased or discarded could provide cause for amending the schedules. The primary purpose of sections 1207 and 1306 is to give the protection of section 362(a) to property acquired postpetition in order to ensure the debtor's ability to perform under a plan.

9 Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 1007.08 (16th ed. 2022) (footnote omitted); see also In re Boyd, 618 B.R. 133 (Bankr. D. S.C. 2020).

This doesn't mean postpetition changes in income are immaterial or not subject to disclosure. 11 U.S.C. § 521(f) is calculated to inform interested parties of increased income. It states:

>   (f) At the request of the court, the United States trustee, or any

3

> party in interest in a case under chapter 7, 11, or 13, a debtor who is an individual shall file with the court—
>
>> (1) at the same time filed with the taxing authority, a copy of each Federal income tax return required under applicable law (or at the election of the debtor, a transcript of such tax return) with respect to each tax year of the debtor ending while the case is pending under such chapter;
>>
>> (2) at the same time filed with the taxing authority, each Federal income tax return required under applicable law (or at the election of the debtor, a transcript of such tax return) that had not been filed with such authority as of the date of the commencement of the case and that was subsequently filed for any tax year of the debtor ending in the 3-year period ending on the date of the commencement of the case;
>>
>> (3) a copy of each amendment to any Federal income tax return or transcript filed with the court under paragraph (1) or (2); and
>>
>> (4) in a case under chapter 13—
>>
>>> (A) on the date that is either 90 days after the end of such tax year or 1 year after the date of the commencement of the case, whichever is later, if a plan is not confirmed before such later date; and
>>>
>>> (B) annually after the plan is confirmed and until the case is closed, not later than the date that is 45 days before the anniversary of the confirmation of the plan;
>>
>> a statement, under penalty of perjury, of the income and expenditures of the debtor during the tax year of the debtor most recently concluded before such statement is filed under this paragraph, and of the monthly income of the debtor, that shows how income, expenditures, and monthly income are calculated.

Interested parties clearly have a right to a debtor's updated financial information during the course of a chapter 13 case. As the Sixth Circuit explained,

> Presumably designed in part to assist creditors and the Chapter 13 trustee in deciding whether to bring motions to modify, § 521(f)(4)(B), which was added by BAPCPA, requires

4

> Chapter 13 debtors (at the request of the Court, the United
> States Trustee or any party in interest) to provide annual
> statements (after the case is confirmed and until it is closed)
> of their income and expenditures. See 11 U.S.C. § 521(f)(4);
> Fridley, 380 B.R. at 544 ("The obvious purpose of this self-
> reporting obligation is to provide information needed by a
> trustee or holder of an allowed unsecured claim in order to
> decide whether to propose hostile § 1329 plan modifications.");
> Nance, 371 B.R. at 371 ("The purpose of [§ 521(f) ], ostensibly,
> is to allow interested parties to monitor a debtor's financial
> situation during the pendency of the bankruptcy case and to
> seek modification of the plan pursuant to § 1329 if changes
> in that situation occur.").

Baud v. Carroll, 634 F.3d 327, fn. 21 (6th Cir. 2011). Nothing in § 521(f)(4) requires a debtor to do more than furnish information upon request. In re Grice, 319 B.R. 141, 144 (Bankr. E.D. Mich. 2004) (refusing to read a mandatory requirement into section 521(f)(4)) but see In re Pautin, 521 B.R. 754, 764 (Bankr. W.D. Tex. 2014) (suggesting section 521(f)(4) is mandatory and "the fact that a party has not sought copies of tax returns or income and expense reports does not allow a debtor to use undisclosed income for her own means.")

    Many courts force self-reporting through a plan provision, by separate order, or in a confirmation provision. For example, a debtor may agree to report any increase in income in order to increase plan payments. See Matter of Belt, 106 B.R. 553 (Bankr. N.D. Ind. 1989). In Oregon, the form confirmation order required the debtor to report gross income increases over 10% and receipt of any non-regular income distributions over $2,500.00. See In re Green, 2013 WL 4525290 (Bankr. D. Ore. 2013). Another court required the debtor to submit quarterly income reports with the understanding that debtor may be subject to a modification to increase plan payments. See In re French, 2005 WL 548081 (Bankr. D. Vt. 2005). Other courts use the plan to impose increased income reporting requirements. See In re Mitchell, 2019 WL 7840716 (Bankr. M.D.N.C. 2019) (requiring debtor to amend schedules and notify trustee of significant increases in income and substantial acquisitions of property); Boyd, 618 B.R. 133 (requiring notice to trustee and amended schedules). A standing order may also be used. See In re Stanke 638 B.R. 571 (Bankr. N.D. Tex. 2022) (requiring debtor to report material income increase and acquisition of property within trustee's guidelines).

    If a reporting duty existed, it would render § 521(f)(4) superfluous and the external vehicles used by the courts would be unnecessary. The lack of an affirmative duty may reflect the burden that would result from requiring a debtor to report changes in income and expenses throughout a plan. Regardless of the reason, the court finds no self-reporting obligation. Debtor complied with his duties under the plan and Code when he provided his tax return to Trustee upon her request. He was not remiss in failing to report his increased income when he earned it.

    Unmistakably, Section 521(f)(4) provides a basis for modification when appropriate. The suggestion from both the statutory provision and the Sixth Circuit's Baud explanation is that

creditors and interested parties must apprise themselves of Debtor's changed circumstances and act accordingly. Baud, 634 F.3d at 577 (stating "if, upon notice of a change in circumstances, a trustee wants to include newly acquired property of the estate in a debtor's plan, it is incumbent upon the trustee to move for a plan modification . . .") Postpetition earnings are property of the estate. 11 U.S.C. § 1306(a)(2). This court has permitted Trustee to capture postpetition income through a modification, but it is up to Trustee or another interested party to act. In re Self, 2009 WL 2969489, * 10 (Bankr. D. Kan. 2009) (footnote omitted) (observing "Congress also elected to place the burden of discovering increased income, and then seeking plan modification, on the Trustee and creditors, because it did not require debtors to amend their plan to account for increased incomes."). It is not incumbent on a debtor to voluntarily provide notice of increased income or modify a plan to include it.

      **II.    Trustee cannot modify a plan to claw back increased income earned prior to the modification.**

Under § 1329(b), several key confirmation provisions also apply to modifications, including § 1322(a). Pertinent to this matter, § 1322(a)(1) requires that a plan, and therefore also a modification, "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Generally speaking, payments are based on a debtor's current situation and future prospects, not the past. A modification must be feasible and past income does not guarantee a present ability to pay. In re Zavala, 366 B.R. 643 (Bankr. W.D. Tex. 2007).

When the plan was confirmed, the payment was based on Debtor's projected disposable income. The overtime he received due to Covid was not foreseeable. Altering his payment after-the-fact nullifies what was projected, instead forcing an "actual" disposable income requirement on him. In re Carey, 2004 WL 3623505, * 3 (Bankr. N.D. Ill. 2004). "There is no provision in the Bankruptcy Code that would authorize a trustee to seek retroactive recovery of excess disposable income." In re Gibson, 582 B.R. 15, 21 (Bankr. C.D. Ill. 2018). A bankruptcy court in Idaho summarized the various reasons to scorn retroactive modifications:

> Many of those plan modifications were proposed by chapter 13 trustees who, upon learning that debtors had realized a significant increase in income after confirmation, sought to capture the benefit of the increased income for creditors. See e.g., In re Wilhelm, 2016 WL 5478471 at *3 (Bankr. D. Kan. Sep. 29, 2016) (rejecting a trustee's argument that "fairness" required retroactive modification of the plan to increase debtor's monthly payments to "catch" debtors' increased post–confirmation income because it "runs afoul of several Code sections .... Just as a debtor cannot retroactively reduce her payments via modification, a trustee or creditor cannot seek to retro-actively increase a debtor's payments."); In re Pautin, 521 B.R. 754, 765 (Bankr. W.D. Tex. 2014) (observing in this context that "the Court cannot wind the clock back to recover income that has been spent or dissipated"); In re Beam, 510 B.R. 399, 406 (Bankr. N.D. Ga. 2014)

(noting "section 1329 does not allow a debtor to retroactively reclassify the status [of a creditor and strip its lien] when the confirmed plan provided for treatment of the claim."); In re Self, 2009 WL 2969489 (Bankr. D. Kan. Sep. 11, 2009) ("any such modification can only be made prospectively, and based upon Debtors' current monthly disposable income."); In re Walters, 223 B.R. 710, 713 (Bankr. W.D. Mo. 1998) ("the Court finds no mention or implication in [the Code] that the amended plan provisions should be applied retroactively. ... the amended plan terms simply become the new terms. The replacement does not alter obligations which have already accrued."). In many cases, the enhanced income received by the debtors had already been spent, the debtors could not make increased plan payments going forward, and the courts concluded that allowing a retroactive increase in payment would render the modified plan infeasible. Similarly, if income decreased significantly after confirmation, yet the debtor has somehow managed to continue to make required plan payments, courts have concluded that the debtor should not be able to retroactively modify the plan to obtain a "refund" of the amounts "overpaid." The general theme of these cases is that the binding provisions of a confirmed plan operate as a contract, and, absent compelling facts justifying a different approach, the parties must respect those terms until the plan is modified, breached, or concluded.

In re Alonso, 570 B.R. 622, 630-31 (Bankr. D. Idaho 2017).

Debtor was complying with this plan and cooperating with Trustee. Two months shy of completion, Trustee modified the plan seeking over ten times the entire amount Debtor was obligated to pay under the confirmed plan. The court rejects her attempt. As a general rule, the court finds that modifications should be prospective, not retrospective. While the court can imagine bad faith scenarios that may require exception, this general rule will protect the terms of the confirmed plan and promote feasible modifications.

## CONCLUSION

Through her modification, Trustee suggests that Debtor was derelict in failing to voluntarily report his increased income in 2021 and modifying his plan to pay the increase into his plan. Debtor was under no such obligation. He complied with Trustee's request for his tax return in compliance with 11 U.S.C. § 521(f)(4). Trustee's attempt to capture the increased earnings through an after-the-fact modification is not supported. She may seek a prospective modification that can feasibly be funded through a debtor's current and future earnings in compliance with section 1322(a)(1).

An order sustaining Debtor's objection to Trustee's modification will be entered directly.

#  #  #

**Service List:**

Gerald B. Golub
1340 Market Avenue North Suite 1
Canton, OH 44714

Dynele L Schinker-Kuharich
Office of the Chapter 13 Trustee
200 Market Avenue North, Ste. LL30
Canton, OH 44702

8